## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CHRIS CAMPBELL, | ) | CASE NO. 10-11677 |
| | ) | |
| Judgment Debtor. | ) | Chapter 7 |

| | | |
|---|---|---|
| WILLIAM C. BEDNAR, | ) | ADV. PROC. NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHRIS CAMPBELL, | ) | |
| | ) | |
| Defendant/Debtor. | ) | |

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY

**COMES NOW**, William C. Bednar, Plaintiff herein, by and through his undersigned attorney and sets forth his *Complaint For Determination Of Dischargeability,* and in support thereof, states and alleges as follows.

1.      This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. § 157(b).

2.      Defendant is the Debtor in the above-captioned Chapter 7 case. Plaintiff is a creditor of Defendant.

3.      This is an adversary proceeding to determine the dischargeability of a debt.

4.      This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 727(a).

## COUNT ONE

5.      Plaintiff filed a lawsuit against Defendant on February 5, 2009 in the District Court of Oklahoma County Case No. CJ-2009-1077 (the "State Court Action") requesting a recovery of Plaintiff's inheritance from his Mother's estate, almost $400,000.00, which he loaned to Defendant.

6.      Defendant defended the lawsuit by claiming that since he was able to persuade Plaintiff not to put the above-described loan in writing, Plaintiff's collection on the loan was barred by the Statute of Limitations.

7.      Defendant also contended in alternative that the loan had been paid.  He asserted this was so by trying to misconstrue Plaintiff's testimony and since Defendant could produce and had no records showing the loan from Plaintiff was paid.

8.      On January 19, 2010, Plaintiff's State Court Action was tried before the Honorable Barbara Swinton, and the Court rejected Defendant's two defenses and awarded Judgment on Plaintiff's loan in the amount of $176,305.82, plus interest of 10% on the unpaid balance and the costs of the action.  See Exhibit 1.

9.      The Court found, "that the bargaining power between these folks was not in any way equal."  The Court further stated, "I hope Mr. Campbell did not set out to take advantage of Mr. Bednar, but it sure looks like that is what happened in the end."  Finally, she stated, "to come out of this bargain with three business and think that (Defendant) can convince this Court that these amounts have been paid is beyond me."

10.     The finding of fact by the Honorable Judge Swinton and the other facts set forth in the trial such as Defendant insisting that no Promissory Note be made reflecting the loan of Plaintiff's inheritance to Defendant, demonstrates that Defendant had a

2

wrongful or fraudulent intent not to repay Plaintiff's inheritance back entirely, especially since his repayment is short by almost $300,000.00 (amount of principal and the interest on the loan according to the State Court Judgment). This conclusion is also echoed by the Court in her statement, "it sure looks like that is what happened in the end," (i.e., Mr. Campbell set out to take advantage of Mr. Bednar).

11.    Therefore, the above facts establish Plaintiff's debt arose from Defendant's intent to obtain money by false pretenses or false representation or by "actual fraud" which is deemed non-dischargeable under Bankruptcy Code 11 U.S.C. § 523(a)(2[A]).

## COUNT TWO

12.    All facts previously alleged in the preceding paragraphs are incorporated by reference.

13.    Plaintiff also objects to the discharge of the Debtor's debt pursuant to 11 U.S.C. § 523(a)(6).

14.    Plaintiff alleges that Defendant's acts were deceitful and were designed to cheat the Plaintiff out of his inheritance when he set out to convince Plaintiff to loan his inheritance without taking a Promissory Note, and then later claim Plaintiff cannot collect on his loan because it was not in writing.

15.    Such an act was clearly intentional and malicious.

16.    Accordingly, Plaintiff's debt described in ¶ 6 of this Complaint is non-dischargeable under 11 U.S.C. § 523(a)(6) of the U.S. Bankruptcy Code.

## COUNT THREE

17.    All facts previously alleged in the preceding paragraphs are incorporated by

3

reference.

18.    Plaintiff also objects to the discharge of the Debtor pursuant to various sections of 11 U.S.C. § 727.

19.    For example, Defendant has failed to keep or preserve books, records, documents, and papers as required by 11 U.S.C. § 727 (a)(3) from which his financial condition or business transactions might be ascertained.

20.    Defendant has testified to this effect at his 341 hearing.  Further, the missing records make it difficult to value Defendant's five active businesses.

21.    Thus, the Defendant's discharge should be denied under 11 U.S.C. § 727 (a)(3).

## COUNT FOUR

22.    All facts previously alleged in the preceding paragraphs are incorporated by reference.

23.    On Defendant's Bankruptcy Schedules, he states that the value of his five business are unknown.  However, at Defendant's Meeting of Creditors, Defendant testified he had no equity in his five businesses.  To determine what the equity in his business is requires that Defendant know the value of the businesses minus its liabilities, to conclude his businesses have no equity.  Hence his statement that he doesn't know how much his businesses are worth is false.

24.    Defendant has also refused reasonable requests from Plaintiff to assist him to value the Defendant's five businesses.  See Exhibit 2.  It appears he has done so in hopes of getting the Trustee to declare this a no asset case and deprive creditors any distributions on their debts.

4

25.     Therefore, Defendant has made a false oath in the case, namely that he has no idea what his five businesses are worth and has intentionally tried to conceal this information from the Court, the Bankruptcy Trustee and the Plaintiff to avoid having his Bankruptcy case properly administered.

26.     Accordingly, the discharge of the Defendant should be denied under 11 U.S.C. § 727(a)(4).

## COUNT FIVE

27.     All facts previously alleged in the preceding paragraphs are incorporated by reference.

28.     At the Defendant's Meeting of Creditors held pursuant to § 341 of the U.S. Bankruptcy Code, Defendant failed to adequately explain the loss of assets received from Plaintiff or the deficiency of his assets to meet his liabilities generally.

29.     The purpose of Defendant failing to explain the disposition of his almost $400,000.00 of Plaintiff's inheritance is for the purpose and intent to hinder, delay or defraud Defendant's creditors including Plaintiff herein.

30.     Therefore, Defendant's discharge should be denied under 11 U.S.C. § 727 (a)(5).

**WHEREFORE**, Plaintiff demands judgment denying Defendant's discharge under Counts One through Five and for such other relief as is just and equitable.

5

Dated this 28th day of June 2010.

                              /s/ Joseph A. Buckles, II OBA #1287
                              JOSEPH A. BUCKLES, II, P.C.
                              6725 N. E. 63rd Street
                              Oklahoma City, OK  73141
                              Phone: (405)771-3305
                              Fax: (405)771-3991
                              E-mail: buckles200@aol.com

                              ATTORNEY FOR PLAINTIFF
                              WILLIAM BEDNAR


## CERTIFICATE OF SERVICE

I, Joseph A. Buckles, II, hereby certify that on the 28th day of June 2010, I electronically transmitted a true and correct copy of the above and foregoing instrument to the Clerk of Court using the CM/ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following CM/ECF registrants.

Ginger D. Goddard                    U. S. Trustee
Bankruptcy Trustee                   215 Dean A. McGee Avenue
224 West Gray Street, Suite 202      4th Floor
Norman, OK   73069                   Oklahoma City, OK 73102

Stephen A. Harry
414 N. W. 4th, Suite 200
Oklahoma City, OK 73102-0375
stephenaharry@sahlawoffice.com

                              /s/ Joseph A. Buckles, II

I, Joseph A. Buckles, II, hereby certify that on the 28th day of June 2010, a true and correct copy of the attached document was deposited by first class United State Mail, postage prepaid on the following who is not registered participates of the CM/ECF System.

Chris Campbell
2724 S. Spruce
Oklahoma City, OK  73128

                              /s/ Joseph A. Buckles, II

6

76

1    Q    Okay.

2              MR. SMITH:  Nothing further, Your Honor.

3                   FURTHER REDIRECT EXAMINATION  -

4    BY MR. WATTS:

5    Q    And you made sure there was nothing in writing,

6    didn't you?

7              MR. SMITH:  Your Honor, that's unfair.

8              THE COURT:  How is that unfair?  He's testified

9    that he had an opportunity to issue a note and he chose

10   not to.  How is that unfair?

11             MR. SMITH:  It's just been asked and answered

12   and we're belaboring the point.

13             THE COURT:  All right.  I think I have it.

14   Okay.  You may step down.

15             MR. WATTS:  Thank you, sir.

16        (Whereupon, that was the end of Chris Campbell's

17        testimony.  After Mr. Willie Bednar testified and

          counsel made their closing arguments to the Court,

          the Court made the following ruling:)

          THE COURT:  All right.  Having considered the

21   evidence in this case and the argument of counsel, I'll

22   find there was a contract between the parties for a loan.

23   And by the silence of Mr. Campbell, that interest was

24   anticipated and expected on these loans.  And because Mr.

25   Campbell agrees that the $4500 loan is his responsibility,

**EXHIBIT**

77

1  I will add that to the total amount of the loans that are
2  stated in Plaintiff's 11 and 12.  So it will be the
3  377,805.58 plus 4500.

4         It's clear that the bargaining power between
5  these folks was not in any way equal.  I hope Mr. Campbell
6  did not set out to take advantage of Mr. Bednar, but it
7  sure looks like that's what happened in the end.  And to
8  come out of this bargain with three businesses and think
9  that he can convince this Court that all these amounts
10 have been paid is beyond me.

11        So the interest will be the -- calculated based
12 on the 171,805.82 being owed from the underlying loans.
13 That doesn't account for the 4500, but as I understand the
14 argument from plaintiff, they are not asking for the
15 interest to be re-calculated.

16        MR. WATTS:  Yes, ma'am.

17        THE COURT:  So the calculations for interest
18 will be adopted from Plaintiff's 11.  And the balance due
19 will be re-calculated based on the change of the 4500 from
20 the total loan balance that was originally paid.

21        And, Mr. Smith, I hope that you will be able to
22 aid your client in coming up with a repayment schedule to
23 avoid future litigation between these folks.  But because
24 there's no evidence as to what your client's current
25 financial position is I can't address that.

**DISTRICT COURT OF OKLAHOMA - OFFICIAL TRANSCRIPT**

# STEPHEN A. HARRY PC.
## *ATTORNEY AT LAW*

| | | |
|---|---|---|
| 414 N.W. 4th Street, Ste. 200 | Phone: | (405) 702-4975 |
| Oklahoma City, OK 73102-3075 | Fax: | (405) 702-4984 |
| email: stephenaharry@sahlawoffice.com | | |

June 17, 2010

Joseph A. Buckles, II
6725 NE 63rd Street
Oklahoma City, OK 73141
**Sent Via Fax-(405) 771-3991**

Dear Mr. Buckles:

As per your fax sent May 28, 2010; I have reviewed your request and talked with

my client. My client has advised me that any information requests need to come from the

Trustee or the Bankruptcy court. Mr. Campbell has provided the courts with all necessary

documentation for filing a Chapter 7 bankruptcy petition.

Sincerely,

Stephen A. Harry

**EXHIBIT**

tabbies

2

**JOSEPH A. BUCKLES, II, P.C.**

*Attorneys and Counselors of Law*
*6725 N. E. 63rd Street*
*Oklahoma City, OK  73141*

*Phone:  405-771-3305*
*Fax:  405-771-3991*

_____

May 12, 2010

By Fax:    702-4984

Stephen A. Harry
414 N. W. 4th Street, Suite 200
Oklahoma City, OK 73102

                Re:    William Bednar
                         <u>Client vs. Chris Campbell</u>
                         <u>Chris Campbell Chapter 7</u>
                         <u>Bankruptcy # 10-11677</u>

Dear Mr. Harry:

My client needs to review the following documents to fully evaluate his claims against Mr. Campbell.

1.     All loan documents from the Sooner Bank's loans and mortgage transactions.

2.     The value and itemization of all property, of the poker machines and other equipment and assets in the warehouse.

3.     Bank statements for 2009 and 2010 for the accounts listed on the Bankruptcy Petition.

4.     All documents for the Debtor's businesses that do not have bank accounts such as general ledgers, Profit and Loss Statements, Balance Sheets, the Quickbooks Transaction Detail By Account reports and other financial documents relating to the finances of the Debtor's businesses (e.g. documents given to the accountant, etc.) for 2009 and 2010.

5.     Sales, Beverage, Income and Franchise Tax returns of the Debtor's businesses.

6.     All credit card records establishing the credit card portion of income sales for the Debtor's businesses?

7.     An inventory of beer and liquor stocks on the date of filing Bankruptcy for the Debtor's businesses?

Stephen A. Harry
May 28, 2010
Page 2


8.    Income records from entertainment machines used by the Debtor in his businesses between 2009-2010.

9.    The terms of the Note relating to the purchase and or financing of the Sooner Cove Club and the Lease Purchase of any equipment therein.

10.    The income tax returns of the Debtor for 2008 and 2009, especially showing the income and expenses of the Debtor's sole proprietor businesses.

11.    All documents showing the assets owned by Chris Campbell Trucking Co. and Campbell's and Associates.

12.    All documents relating to the IRS audit of the Debtor and his businesses.

13.    Balance Sheets on all the Debtor's businesses.

14.    All documents related to the asset on Schedule G such as the Lease Option Agreements, payments made, therein, etc.

If these documents can be produced by June 15, 2010, please let me know what portion of the above documents can be produced by then.


Very Truly Yours,

Joseph A. Buckles, II


JAB/seb

cc:    William C. Bednar

Ginger D. Goddard
By Fax: 310-6379

Charlie Glidewell
By Fax:      231-5958